State v. Kanupka.

---

THE STATE v. JOHN KANUPKA, Appellant.

Division Two, February 19, 1913.

1. **APPEAL: No Specific Assignment.** In a criminal case, though there are no specific assignments of error, the court on appeal, where the record contains the bill of exceptions, will examine the record.

2. **NO ALLOCUTION: Not Reversible Error.** The lack of an allocution in the judgment and sentence is cured by statute, where either a motion for a new trial or a motion in arrest is filed and heard, for then the statutory necessity for allocution ceases to be mandatory, and becomes directory only (Sec. 5264, R. S. 1909).

3. **WEIGHT OF EVIDENCE: For Jury.** Where there is substantial evidence of defendant's guilt, its weight is for the jury, though that for him if true makes him the injured party.

4. **OBJECTION: Not Specific.** Unless the objection to the admission of evidence is specific, its admission cannot be urged as error on appeal.

5. **EVIDENCE: Res Inter Alios: Hearsay.** Where a daughter of defendant, in his prosecution for an assault with intent to do great bodily harm with a deadly weapon, had testified that she had taken a pistol out of the pocket of the prosecuting witness, it was not error to refuse to permit a police officer to testify where she got the pistol, no exception to the rule that what she said was hearsay and but *res inter alios* appearing.

6. **REMARKS OF COUNSEL: Not Preserved.** If the remarks of the prosecuting attorney are not preserved in the record it cannot be held that they were improper.

Appeal from St. Louis City Circuit Court.—*Hon. George C. Hitchcock,* Judge.

AFFIRMED.

*Leahy, Saunders & Barth* for appellant.

(1) The defendant is presumed to be innocent of the crime charged against him, and unless there was substantial evidence of his guilt the court should not have submitted the case to the jury, and the defendant's requested instruction should have been sustained. State v. Young, 237 Mo. 176; State v. Scott, 177 Mo. 665. (2) Where it appears that the result obtained by the verdict must have been ascribed to prejudice, passion or partiality, and not to that calm weighing of the facts in evidence which should always characterize the deliberations of a jury, the verdict will not be allowed to stand. State v. Primm, 98 Mo. 372; State v. Castor, 93 Mo. 243.

*Elliott W. Major,* Attorney-General, and *Ernest A. Green,* Assistant Attorney-General, for the State.

(1) It was within the province of the court to reduce the duration of the punishment from three years' imprisonment, as assessed by the jury, to two years and six months, and then to enter judgment upon the verdict of the jury as modified. Sec. 5257, R. S. 1909; State v. Moses, 139 Mo. 220; State v. Tull,

119 Mo. 421. (2) The only evidence offered by the defendant which was excluded is that where the defendant undertook to prove by the officer, Laidle, what defendant's daughter had said to him as to where she got the pistol offered in evidence. This was hearsay and very properly excluded by the court. State v. Levy, 168 Mo. 521; State v. Hathhorn, 166 Mo. 229; State v. Huff, 161 Mo. 488. (3) It is urged that the verdict is contrary to the law and the evidence. This contention is not supported by the evidence in the case. The State offered evidence tending to prove every material fact essential to establishing defendant's guilt, and under appropriate instructions the jury returned a verdict of guilty. This court will not convert itself into a trier of facts and undertake to find a different result from that of the jury. State v. Matthews, 202 Mo. 147; State v. McCullough, 171 Mo. 574; State v. Tetrick, 199 Mo. 100; State v. Williams, 199 Mo. 137. (4) The alleged improper remarks are not set out in either the bill of exceptions or the motion for new trial, whereas they should have been incorporated in both in order to be reviewable. State v. Jeffries, 210 Mo. 337; State v. Baker, 209 Mo. 451; State v. Clapper, 203 Mo. 384. (5) The record expressly shows that no exceptions were saved to the giving of any of the instructions by the court, nor is any exception taken to them in the motion for a new trial; therefore they are not before this court for review. State v. Waters, 156 Mo. 132; State v. Brown, 168 Mo. 449; State v. Meadows, 156 Mo. 110; State v. Gregory, 158 Mo. 139.

FARIS, J.—Upon an information, duly verified, and filed by the assistant circuit attorney in and for the city of St. Louis, at the April term, 1911, of said court, charging defendant with assault with intent to do great bodily harm upon one Alfred Gunners, with a deadly

**Assault With Intent.**

weapon, he was, at the same term of said court, convicted of said offense and his punishment assessed by a jury at three years' imprisonment in the penitentiary. After unsuccessful motions for a new trial and in arrest of judgment, the court, under the provisions of section 5257, Revised Statutes 1909, reduced the punishment as assessed by the jury to two and one-half years' imprisonment in the penitentiary. Sentence was duly imposed in accordance with the verdict and order of the court. From which judgment and sentence defendant has prosecuted his appeal to this court.

The evidence for the State tended to prove that the prosecuting witness, Alfred Gunners, was a married man, living on the 13th day of March, 1911 (the day of the alleged assault), at No. 5051 South Thirteenth street in the city of St. Louis. The defendant, John Kanupka, with his family, lived in the next block.

The Facts.

About seven o'clock on the evening of March 13, 1911, the prosecuting witness, Gunners, went to the residence of the defendant to see Sylvester Kanupka, a son of the defendant, to talk with him about some insulting remarks which Gunners stated the boy had made to his (Gunners') wife and to ask the said Sylvester to refrain from such character of remarks. Gunners testified that when he knocked at the door of the defendant's home it was opened by the defendant, and that he, Gunners, asked defendant if his son was at home. Defendant, who was a Polander, and who did not speak English very fluently, replied that he was not, but inquired what Gunners wanted. Gunners told him that he wanted to see the boy, Sylvester Kanupka, but that if he was not at home he would come back again and see him. Again inquiring of Gunners what he wanted with the boy, Gunners told him, whereupon defendant began cursing, and Gunners remarked: "Man, what is the matter with you?

Can you say one word I ever done to you?'' Kanupka then began talking in his native tongue and slammed the door in Gunners' face as he walked out. As Gunners walked out of the yard and was endeavoring to hook the gate, he testified that Kanupka ''sneaked up behind me with one of them machinist's hammers weighing about a pound and a half, or two pounds, and hit me on the head with it.'' That the blood ran down his face, but the lick did not knock him down, and that he and defendant began fighting. While they were fighting the defendant's wife and three or four of his largest children got on top of the prosecuting witness and held him down. Gunners testified that he grabbed with his left hand defendant's hammer which he was swinging at him, and quoting his language, says: ''When he got me down he simply beat the life out of me. He cracked my shoulder bone; I told him 'my arm was broke; for God's sake quit, now;' he hit me once here, that knocked me unconscious.'' Gunners testified that he was bruised about his side, knees and kidneys; that he was in bed under the care of a physician for about two weeks, and that it was four weeks before he could walk without a cane. About the time Gunners regained consciousness, his wife came down and he was dragged home by her and his brother-in-law. Gunners denied that he made any assault whatever on Kanupka, or that he had a pistol with him at the time he went to Kanupka's home.

Dr. H. E. Livingston corroborated the prosecuting witness as to treating his wounds and as to the extent of them; stated that the character of the wounds received by the prosecuting witness were such as could have been inflicted with some kind of a blunt instrument. The physician further testified that in his opinion the injury to Gunners' shoulder was a permanent one.

The wife of the prosecuting witness testified that when she heard her husband screaming for help she

went to Kanupka's house; that she saw defendant hit her husband on the hip with a hammer while he was lying with his face on the ground; that she tried to get her husband up, but defendant hit her in the face with his hand; that she ran home, returning with a pistol, and that the defendant's son hit her in the back-of the neck and the defendant hit her in the face; that they took the pistol away from her, and that she then. went into the street and hollowed for help, and that her brother-in-law came and helped her husband up and the two of them assisted him home.

It also appears from the evidence that although the families were only slightly acquainted, Kanupka's family were unfriendly to Gunners and his family, because Mrs. Gunners had been a witness against one of the defendant's boys in the police court a short time prior to the difficulty.

Another witness as to a part of the details of this difficulty was Harry Gomache. His testimony to a slight extent corroborates that of Mrs. Gunners as to when and where she got the pistol.

The defendant undertook to prove by himself, his wife, his son, his daughter and his wife's daughter-in-law the defense of self-defense; that the prosecuting witness made the first assault and attempted to draw a pistol, but was prevented by their combined efforts. The defendant denied having or making use of a hammer on this occasion. He admitted, however, that he had no bruises upon him as a result of the difficulty.

Defendant's daughter, Anna Kanupka, testified that during the difficulty the prosecuting witness, after striking defendant, attempted to draw his revolver from his hip-pocket; that her attention was attracted to it by the screaming of her mother, and that after some little time, while her father and Gunners were engaged in the difficulty, she succeeded in getting the pistol out of Gunners' pocket; that it was

immediately taken up stairs, and turned over to a policeman upon his arrival shortly after the difficulty.

A police officer produced upon trial a loaded pistol which he stated he obtained at the home of the defendant shortly after the difficulty.

Defendant also offered some slight evidence touching his previous good reputation for peace and order.

We deem this a sufficient statement of the facts to enable us to dispose of the legal questions presented.

## OPINION.

The brief of defendant containing an assignment of errors, filed here by learned counsel for defendant, makes such assignment generally; not specifically. In the last analysis, these assignments are two, viz.: (a) that the evidence was not sufficient to go to the jury, and (b) that the court erred in overruling defendant's motions for a new trial and in arrest. But as in duty bound we have, as the statute enjoins (Sec. 5312, R. S. 1909), carefully examined the record, which includes the bill of exceptions, made a part of the record by proper and timely orders.

No Specific Assignment.

Learned counsel for defendant confuse, inadvertently no doubt, the office and contents of a motion in arrest with those of a motion for a new trial; since the motion in the record, styled a "motion in arrest," is but a copy of his motion for a new trial. The distinct offices of these two motions are prescribed by statute. [Cf. Secs. 5284 and 5286, R. S. 1909.] Upon the statutory prescription slight enlargements germane to such prescriptions have been engrafted by practice. For illustration, attention may be properly called to error or omission in the record proper by an allegation in the motion in arrest, in form substantially thus, "that upon the record the judgment is erroneous." No such guide-post pointing to

specific error has been planted for us in the case at bar.

We are required, therefore, to examine defendant's motion for a new trial, as well as what we may call for convenience the *record proper.*

**Record Proper.**

Examining the latter we find an information, duly filed and sufficient in form and substance; a proper and formal record of the plea of not guilty; an appeal ''to the country'' by both defendant and the State; a legally impaneled jury sworn to try the case, and a verdict of guilty returned, which verdict meets the requirements of the strictest approved form. While the judgment and sentence lacks the allocution, it is otherwise sufficient. The lack of allocution is cured by statute, since where either a motion for a new trial or a motion in arrest is filed and heard, the statutory necessity for allocution ceases to be mandatory and becomes directory only. [Sec. 5264, R. S. 1909; State v. Nagel, 136 Mo. l. c. 51.]

**Allocution.**

Turning to defendant's motion for a new trial, we find him complaining of the court's refusal to sustain his demurrer to the evidence, and urging also that the verdict is contrary to the ''law and the evidence.'' These objections are cognate and may be considered together. The evidence was conflicting. If we are to believe the witnesses for the State the defendant was guilty of a most unprovoked and outrageous assault, inferably from the evidence, from no present cause or provocation, but to satisfy his revenge for an insignificant and fancied wrong. If we believe the witness for the defendant, who were, as to all the salient facts, his wife and children and the daughter-in-law of his wife, he is an innocent martyr, who did naught but protect his home and person from an armed and obsence trespasser who attacked him in his own home and in the bosom of his family. Fortunately, we do not have

**Conflicting Evidence.**

to pick and choose with so great latitude and chance of error. The jury as the triers of fact resolved this otherwise so dangerous a doubt against the defendant. Face to face with the witnesses, they saw them, heard them and observed their manner, and it is for them to weigh the witnesses' credibility and not for us. There is ample evidence to sustain the verdict, and we are not disposed to disturb it. So we rule this point against defendant.

Complaint is made also that the court erred in admitting incompetent, irrelevant and immaterial evidence for the State, and in refusing to admit competent, relevant and material evidence for the defendant. These complaints are in the state of the record related in kind, and may be considered together. This assignment is general, and an exhaustive examination of the transcript of the evidence, as preserved in the bill of exceptions, discloses a record singularly free from the vice charged. Less than half a dozen objections and exceptions were made and saved, and none, except one hereinafter adverted to, properly made and saved. Either the question asked was withdrawn, or not answered, or specific ground of objection was not made. Absent specific grounds of objection, absent error. [State v. Goddard,. 162 Mo.

**No Specific Objection.** 198.] Searching the transcript we find one exception which deserves passing notice. Upon the trial defendant undertook to prove by one Laidle, a police officer, certain statements made by Anna Kanupka, a daughter of defendant and a witness in this case for defendant, as to where

**Hearsay.** she had gotten the pistol. Anna Kanupka had testified in the case already that she took the pistol out of the pocket of the prosecuting witness Gunners. Laidle was asked by counsel for defendant: "Q. Did she say where she got it [the pistol]? A. She said she took it out of——State (interrupting): I object to what she said as being incompetent.

Court:    Objection sustained.    Defendant saved his exceptions.'' No exception to the rule that this was hearsay and but *res inter alios* (as for example, that it was a part of the *res gestae*) appearing from the record, we see no escape from the conclusion that it was not admissible and the court so holding ruled correctly. [State v. Levy, 168 Mo. 521; State v. Hathhorn, 166 Mo. 229.]

Complaint is made that the verdict of the jury was the result of improper remarks of the prosecuting attorney, but as not one word or syllable of remarks, either proper or improper, is shown by the record, we must rule this point against defendant.

Remarks of Counsel.

Finding no error in the record, the judgment is affirmed and the sentence imposed by the trial court, ordered to be executed. *Brown, P. J.,* and *Walker, J.,* concur.